# The Mutual Protection Life Insurance Co. *versus* Laury.

L. took out a policy of insurance on his life in a mutual insurance company; the policy provided that a failure to pay any assessment within forty days after notice of the death of a member, should work a forfeiture of the policy; a rule of the company provided that members whose policies had lapsed might be reinstated upon presenting a certificate of good health and paying all unpaid dues. Notices of the death of four members, and the consequent assessments, were sent successively, at intervals, to L., but he never paid the assessments. Afterwards, notice of the death of a fifth member of the company was sent to him; he was then on his death bed. His brother-in-law, not knowing that the other assessments were unpaid, sent this assessment to the company in L.'s name, but without his authority. The secretary did not enter the money on the books, but held it, and wrote to L. for information in regard to his unpaid assessments. L. died two days before this letter was written. Hearing that he was dead, the company tendered back the money to his representatives, who refused to receive it. In an action on the policy, brought by L.'s widow, in whose favor it was written, *Held* (reversing the court below), that there was no evidence to go to the jury to find a waiver of the forfeiture of the policy caused by the failure of L. to pay the assessments levied upon him.

March 2d 1877. Before AGNEW, C. J., SHARSWOOD, MERCUR, GORDON, PAXSON and WOODWARD, JJ.

Error to the Court of Common Pleas of *Lehigh county:* Of January Term 1876, No. 177.

Debt by Elizabeth Laury against the Mutual Protection Life Insurance Company, upon a policy of insurance on the life of her husband, Lewis Laury, issued by the defendant company, in her favor; plea, *nil debet*. The only question decided was whether the company had waived the forfeiture of the policy, which had taken place from Laury's failure to pay the assessments on it according to its terms.

The policy contained this provision :—

" The above-named member or members hereby agree to forward to the company $2.60, within forty days after notification of the death of any member of General Class B., Series 1, and it is further agreed that if the said amount is not received by the company within forty days from the date of such notice, then this policy shall be null and void, and the privileges therein conferred forfeited."

A resolution of the board of directors of the company provided that " the secretary notify all those whose policies have lapsed from non-payment of assessments or dues, that they may be reinstated in the company by producing to the secretary a certificate of good health from any regularly graduated physician, obtained at their own expense, and the payment of all dues and assessments."

Laury took out his policy in August 1872 ; between October 21st 1872 and February 11th 1873, four members of the company died, and notices of their death and the consequent assessments were duly served upon Laury, in accordance with the provisions of the policy. He made no reply to these notices, and never paid the assessments. On April 15th 1873 Laury died, after an illness of about two weeks. On the day before he died, one Laubach, a brother-in-law of Laury and the postmaster at his usual post office, opened a letter in the post office addressed to Laury, and finding that it was a notice of the death of a member of the company (the fifth death), and of an assessment upon Laury, enclosed the amount of the assessment, together with an assessment on another policy, in a letter to the company in Laury's name. Two days after his death, the secretary of the company wrote the following letter :—

" Philadelphia, April 17th 1873.

Lewis Laury, Esq.

Dear Sir :—Your letter of the 14th inst., containing $5.20, is received. In examining your account I notice you have no credit for Gries, Moody, Fagundus and Cyphers. Will you please inform me how this is ? Possibly you have not received the notices, or you may not have credit because the payment has not been reported to the office by the agent. An early answer is respectfully requested.

Very truly yours, C. C. Baughman."

As soon as the company was informed of Laury's death, the amount sent to it by Laubach was sent to its agent at Allentown, and tendered by him to the representatives of Laury. This amount was never credited to Laury on the company's books, it appearing by them at that time that he had not paid his assessments, and his policy was never reinstated under the rules.

It did not appear that any special notice had been sent to Laury under the above resolution of the company, though there was evidence that the secretary usually acted upon it in other cases ; the secretary however testified that he sent the notices of death to the

members, even after the lapse of a policy (as he had done in this case), that they might be reminded of their previous membership and reinstate themselves if possible.

The case was tried before Walker, A. L. J., as Judge Longaker was a member of the defendant corporation.

After testimony was given tending to prove the above facts, the learned judge refused to charge as requested in the defendant's fourth point, that there was no evidence upon which the jury could find a waiver of the forfeiture of the policy, and left it to the jury to decide whether the company had collected from Laury assessments made after the alleged lapse of the policy. The jury found for the plaintiff. After judgment on the verdict, the defendant took this writ of error, assigning for error, among other things the answer to the defendant's fourth point.

*R. E. Wright & Son*, for the plaintiff in error.—There was but a scintilla of evidence to go to the jury and that is not enough: Express Co. v. Wile, 14 P. F. Smith, 204; Baisch v. Oakeley, 18 Id. 99. Sending notices of death did not tend to prove a waiver and was not inconsistent with a forfeiture; it would not therefore create an estoppel, which alone is the ground of waiver in such cases: Elliott v. Lycoming County Mutual Ins. Co., 16 P. F. Smith 26; Ins. Co. v. Slockbower, 2 Casey 199.

The assessment sent to the company by Laubach, in Laury's name, was never accepted, and the action of the company in regard to it affords no evidence of a waiver.

*Edward Harvey* and *William H. Sowden*, for the defendant in error.—Where there is any evidence which alone would support a verdict, it must go to the jury, no matter how strong the countervailing proof is: Express Co. v. Wile, *supra ;* Baisch v. Oakeley, *supra*. The sending of notices of assessments to Laury after the alleged forfeiture shows that the company still considered the policy in force, and proof of this was enough to warrant the jury in finding a waiver.

Mr. Justice PAXSON delivered the opinion of the court, March 28th 1877.

The principal question upon the trial of this cause in the court below, as well as upon the argument here, was whether the company had waived a forfeiture under the third clause of the conditions of the policy. All of the assignments of error, from the fourth to the thirteenth, bear upon this question, and may be considered together.

The contention of the plaintiffs in error was that the learned judge submitted the question of waiver to the jury upon insufficient evidence. His answers to the plaintiff's fifth, sixth, seventh and eighth points, left the jury at liberty to pass upon the question of

fact, whether the company had collected from Laury assessments made after the alleged lapse of the policy. Upon this point there was not sufficient evidence to submit to the jury. A scintilla is not enough: Express Co. *v.* Wile, 14 P. F. Smith 204. The only evidence was that the notice of assessments intended for Laury was received by Adam Laubach, his brother-in-law, who, of his own motion, enclosed the amount, $5.20, to the company. The letter containing the money was received by the company, and under the impression that it came from Laury, the secretary addressed a letter to him under date of April 17th 1873, in which he said: "Your letter of the 14th inst., containing $5.20, is received. In examining your account I notice you have no credit for Gries, Moody, Fagundus and Cyphers. Will you please inform us how this is? Possibly you have not received the notices, or you may not have credit because the payment has not been reported to the office by the agent. An early answer is respectfully requested." This letter was written two days after Laury's death. Immediately, upon learning the facts, the company sent the money to their agent at Allentown, who tendered it to the personal representatives of the deceased. The above facts furnish no evidence of the receipt of the money by the company in the sense of payment. It is true the letter containing the money was received. But the money was not accepted. It was held until inquiry could be made and then returned. Upon this state of facts it was error to submit to the jury the question whether the company had collected and received from Laury the money upon the assessments. There was no evidence to warrant a finding that it had been collected.

The tenth assignment raises the broad question whether there was sufficient evidence in the case to entitle the jury to find a waiver of the forfeiture on the part of the company. The court below held that there was, and refused the defendants' fourth point. We have already shown that there was no evidence that the company collected or received, in the sense of payment, the money upon the assessments made against Laury after his default. Were the assessment notices in themselves sufficient evidence of a waiver? If not, the company were entitled to an affirmance of their fourth point, for there is nothing else in the case. In considering this question regard must be had to the resolution of the company passed in 1872, providing that "the secretary notify all those whose policies have lapsed from non-payment of assessments or dues, that they may be reinstated in the company by producing to the company a certificate of good health from any regularly graduated physician, obtained at their own expense, and the payment of all dues and assessments." It appears by the testimony that the company acted under this resolution. The secretary says: "I sent the notices to members that they might be reminded of their previous membership and might reinstate themselves, if possible." This evidence was

uncontradicted. This company appears, as its name implies, to have been organized upon the principle of mutual protection. A large amount of indulgence seems to have been extended to the members, and a liberal provision made by which defaulting members might be reinstated. It would be unjust to the company if this liberality should be turned against itself, and assessment notices which were intended for a different purpose should be held to be a waiver of a forfeiture in favor of a policy holder who never paid nor offered to pay his dues. We fail to see sufficient evidence of a waiver to justify the submission of that question to the jury. The defendant's fourth point ought to have been affirmed.

Under the view which we take of the case, the refusal of the court below to permit the withdrawal of the plea of *nil debet* becomes immaterial. So also as to the evidence referred to in the second and third assignments. It was improperly received, as it did not contradict Mr. Baughman, and was irrelevant. A discussion of these questions would be fruitless.

Judgment reversed, and a *venire facias de novo* awarded.